UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DIRECTORS OF THE MOTION PICTURE INDUSTRY PENSION PLAN AND DIRECTORS OF THE MOTION PICTURE INDUSTRY HEALTH PLAN,<br><br>            Plaintiffs,<br><br>    vs.<br><br>FORTY ACRES AND A MULE FILMWORKS, INC., a New York Corporation, BLACK BUTTERFLY PRODUCTIONS, LLC, a Delaware Limited Liability Company, AND SHELTON J. LEE, an individual,<br><br>            Defendants. | **COMPLAINT**<br><br>Case No. |

Plaintiffs, Directors of the Motion Picture Industry Pension Plan and Directors of the Motion Picture Industry Health Plan ("Plans"), allege:

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, § 502(e)(1) of the Employee Retirement Income Security Act of 1974, as amended (hereinafter "ERISA") [29 U.S.C. § 1132(e)(1)] and § 301 of the Labor-Management Relations Act (hereinafter "LMRA") [29 U.S.C. § 185(a)]. This is an action by the directors of the Motion Picture Industry Pension Plan and directors of the Motion Picture Industry Health Plan (collectively, "the Directors") for breach of collective bargaining agreements between an employer and multiple labor organizations representing employees in an industry affecting commerce and to enforce § 515 of ERISA [29 U.S.C. § 1145] as amended by § 306(a) of the Multi-Employer Pension Plan Amendments Act of 1980 (hereinafter "MPPAA"), P.L. 96-364.

2.      Such jurisdiction exists without respect to the amount in controversy or the citizenship of the parties, as provided in § 502(f) of ERISA [29 U.S.C. § 1132(f)] and § 301(a) of the LMRA [29 U.S.C. § 185(a)].

1

3. Venue is based on the location of the Plans, which maintain an office in New York County, located in the Southern District of New York, as well as the residence of Defendant Lee. As such, venue is appropriate pursuant to § 502(e)(2) of ERISA [29 U.S.C. § 1132(e)(2)] and under § 301 of the LMRA [29 U.S.C. § 185(a)].

## PARTIES

4. The Directors are fiduciaries who administer the assets of the Plans. The Plans are "employee benefit plans" within the meaning of section 3 of ERISA [29 U.S.C. § 1002] in that they were created pursuant to written declarations of trust ("Trust Agreements") between the International Alliance of Theatrical Stage Employees ("IA"), the International Brotherhood of Teamsters Studio Transportation Drivers Local #399 ("IBT"), the American Federation of Musicians Local 47 ("AFM") (collectively, "Unions"), and motion picture and television producer employers, and are maintained for the purpose of providing their participants and beneficiaries with retirement benefits as well as medical, surgical and hospital benefits in the event of sickness, accident, disability or death. The Plans were created and now exist pursuant to section 302(c) of the LMRA [29 U.S.C. § 186(c)]. The Plans maintain an office at 145 Hudson Street, New York, New York 10013.

5. As fiduciaries under ERISA, the Directors have an obligation to protect the Plans' assets, including by ensuring that employers are properly remitting pension and health contributions to the Plans as required under collective bargaining agreements between the Unions and motion picture and television producer employers ("CBAs"). Under the Trust Agreements, the Directors have control and authority over the Plans, including the authority to file actions.

6. The Plans are "multiemployer plans" within the meaning of ERISA section 3(37)(A) [29 U.S.C. § 1002(37)(A)] in that more than one employer is required to contribute to the Plans and the Plans are maintained pursuant to the CBAs.

7.At all times material herein, the Unions have been labor organizations representing employees in the motion picture and television business, an industry affecting commerce within the meaning of LMRA section 501(1) [29 U.S.C. § 142(1)].

8.At all times material herein, defendant Black Butterfly Productions, LLC ("Black Butterfly") has been a limited liability company organized and existing under the laws of the State of Delaware.  Black Butterfly is an "employer" within the meaning of both ERISA section 3(5) [29 U.S.C. § 1002(5)] and LMRA section 501(3) [29 U.S.C. § 142(3)].  As such, Black Butterfly is an employer as that term is used in section 301(a) of the LMRA [29 U.S.C. § 185(a)].

9.At all times material herein, defendant Forty Acres and a Mule Filmworks, Inc. ("Forty Acres") has been a corporation organized and existing under the laws of the State of New York.  Forty Acres assumed all assets and liabilities of Black Butterfly.

10.Defendant Shelton J. ("Spike") Lee, an individual, resides in New York, New York. The Directors are informed and believe, and on that basis allege, that at all times material herein, defendant Lee has been the owner and Chief Executive Officer of Forty Acres and the sole owner of Black Butterfly.

11.The Directors are informed and believe, and thereon allege, that at all material times herein Forty Acres and Black Butterfly were and are alter egos of each other and/or a single employer, and are jointly and severally liable for the debts of each other.  At all times herein, Defendants have had an interrelationship of operations, common management, centralized control of labor relations, common ownership or financial control, and are, in fact, one and the same.

## FIRST CAUSE OF ACTION

(Breach of Collective Bargaining Agreement and Trust Agreements –

Payroll-Based Contributions)

12.The Plans incorporate by reference each allegation contained in Paragraphs 1 through 11 as though fully set forth herein.

3

13. At all times material herein, Black Butterfly has been a signatory to the CBAs and has agreed to be bound by the terms and conditions of the Trust Agreements creating the Plans. At all times material herein, Black Butterfly has been obligated to the terms and provisions of the CBAs and Trust Agreements. Relevant excerpts of the CBAs are attached as Exhibit A.

14. Pursuant to the terms of the CBAs and Trust Agreements, the Plans have the authority to conduct an audit of the books and records of signatory employers for the purpose of determining the accuracy of pension and health contributions made to the Plans including, but not limited to, payroll records and any other books or records which the Plans deem necessary in connection with the proper administration of the Plans. The Trust Agreements provide that if such an audit discloses a delinquency or underpayment, the costs of the audit shall be borne by the signatory who is found to be delinquent, and that if litigation is required to compel such an audit, the costs of such litigation are to be borne by the signatory.

15. On or about April 28, 2010, the Plans announced a payroll audit of Black Butterfly ("Audit") for the period of September 23, 2007 to March 6, 2010. On April 6, 2011, the Plans issued an audit report ("Report"). The Report found that $44,987.87 in unpaid contributions was due for work performed by various IA- and IBT-represented individuals. Attached as Exhibit B is a true and correct copy of the letter sent to Black Butterfly detailing the Audit findings. Black Butterfly owes the $44,987.87 in contributions identified by the audit report, plus any additional contributions as may be proved at trial.

16. The cost of such audit to the Plans was $4,500, plus any additional amount as may be proved at trial. (Exhibit B).

17. Despite multiple demands, Black Butterfly has failed to pay the claims asserted by the Plans. Black Butterfly refuses, and continues to refuse, to pay the amounts due for unpaid contributions disclosed by the audit.

18. Pursuant to 29 U.S.C. § 1132(g)(2), the CBAs, and the Trust Agreements, Black Butterfly owes the Plans interest at the annual rate of 12 percent on all unpaid contributions from the dates the sums were originally due to the Plans to the date of judgment. The Plans are

informed and believe, and thereon allege, that interest is due to the Plans by Black Butterfly in an amount to be established by proof at the trial herein.

19. By the CBAs, Trust Agreements, and 29 U.S.C. § 1132(g)(2), Black Butterfly agreed that in the event it failed to pay contributions when due, it would be considered delinquent with the Plans and would pay the Plans the sum of 20 percent of the total amount then due, or interest on the amount due at the rate of 12 percent from the date the contributions were due, whichever is greater, as liquidated damages for each delinquency. The Plans are informed and believe, and thereon allege, that liquidated damages are due to the Plans by Black Butterfly, in an amount to be established by proof at trial.

20. By the CBAs and Trust Agreements, Black Butterfly also agreed that in the event of any delinquency, it would pay legal and audit costs in connection therewith, whether before or after litigation is commenced. These costs will be established by proof at trial.

21. It has been necessary for the Plans to engage the law firms of Bush Gottlieb and Spivak Lipton for the purpose of collecting all amounts found in this audit due from Black Butterfly and Forty Acres. Pursuant to the CBAs, Trust Agreements, and 29 U.S.C. § 1132(g)(2), the Plans are entitled to their reasonable attorneys' fees and costs in connection therewith.

22. At all times material herein, Black Butterfly was under an affirmative duty, pursuant to the terms of the CBAs and Trust Agreements, to provide the Plans with information so that they may determine whether payroll contributions paid were proper and to pay the Plans the correct amount of contributions. The Directors are informed and believe, and on that basis allege, that Black Butterfly failed to accurately report this information and pay the contributions. The Directors reposed trust and confidence in Black Butterfly and relied on Black Butterfly to accurately report and pay the correct amount of contributions to the Plans so as to toll the statute of limitations, if applicable.

## SECOND CAUSE OF ACTION

(Claim for Damages for Violation of ERISA)

23. The Plans incorporate by reference each allegation contained in Paragraphs 1 through 22 as though fully set forth herein.

24. Pursuant to 29 U.S.C. §§ 1132 and 1145, the Plans are entitled to the unpaid contributions, interest thereon at the contractual rate, an additional amount equivalent to contractual interest or liquidated damages at 20 percent, whichever is greater, reasonable attorneys' fees, audit costs, costs of this action, and such other legal and equitable relief as the Court deems appropriate.

## THIRD CAUSE OF ACTION

(Black Butterfly and Forty Acres are Alter Egos)

25. The Plans incorporate by reference each allegation contained in Paragraphs 1 through 24 as though fully set forth herein.

26. The Plans are informed and believe and on that basis allege that there is an interrelationship of operations, employees, management and ownership between Black Butterfly and Forty Acres. The Plans further allege that in Forty Acres there was centralized control of labor relations and that both Black Butterfly and Forty Acres operated from the same addresses, including 124 DeKalb Avenue, Brooklyn, NY 11217 and 75 South Elliott Place, Brooklyn, NY 11217, used the same phone numbers, and were staffed by the same individuals.

27. The Plans are informed and believe and on that basis allege that at all relevant times the common members, managers, and owners of Black Butterfly and Forty Acres have commingled their assets and property, paid debts on behalf of one another, and represented to creditors and employees that they are the same entity.

28. On information and belief, the single asset of Black Butterfly—the film *Miracle at St. Anna* ("Film")—was transferred to Forty Acres without adequate consideration. Forty Acres was represented to the public as the producer of the Film and was credited with the Film's production.

29.     Forty Acres is therefore bound to the CBAs to the same extent as Black Butterfly and is obligated to report and pay to the Plans all unpaid contributions, interest, liquidated damages, audit costs, legal and attorneys' fees as set forth in the CBAs and Trust Agreements.

**FOURTH CAUSE OF ACTION**

(Piercing the Corporate Veil - Against Shelton J. Lee and Black Butterfly)

30.     The Plans incorporate by reference each allegation contained in Paragraphs 1 through 29 as though fully set forth herein.

31.     The Plans are informed and believe and on that basis allege that at all times, Lee exercised dominion and control over Black Butterfly, and that the acts, business, and contracts of Black Butterfly, were and are the acts, business, and contracts of Lee; that Black Butterfly operated as a business conduit through which Lee engaged in business; Lee treated the legal rights of Black Butterfly as rights of his own, and treated the assets of Black Butterfly as his own; and that in so doing, used Black Butterfly's corporate assets while failing to pay just debts of Black Butterfly; that there is such a unity of interest and ownership between Black Butterfly and Forty Acres, that the individuality and separateness of these Defendants ceased and that adherence to the fiction of the separate name of Black Butterfly as a business entity would be a deliberate misuse of the corporate form and would, under the circumstances, promote a fraud and injustice.

32.     The Plans are informed and believe and on that basis allege that at all times, through Lee's fraudulent operation and control of Black Butterfly, Lee is liable to the Directors and Black Butterfly and Lee are obligated to pay to the Directors all unpaid contributions, interest, liquidated damages, audit costs, legal and attorneys' fees as set forth in the CBAs and Trust Agreements.

**PRAYER FOR RELIEF**

WHEREFORE, the Plans pray for judgment against Defendants, Black Butterfly Productions, LLC, a Delaware Limited Liability Company, and Forty Acres and a Mule Filmworks, Inc., a New York Corporation, and Shelton J. Lee, an individual, jointly and severally as follows:

1. for unpaid payroll contributions to the Plans in the amount of $44,987.87, plus any additional delinquent amount established at trial;

2. for liquidated damages of 20 percent of the amount due, or an additional amount equal to interest at the rate of 12 percent, whichever is greater;

3. for interest at the rate of 12 percent on all fringe benefit contributions from due dates;

4. for reasonable attorneys' fees and costs of this action incurred by the Directors;

5. for costs of the audit in the amount of $4,500, plus any additional amount established at trial; and,

6. for such additional relief as this Court deems just and proper.


DATED:  November 23, 2016          SPIVAK LIPTON LLP

                                   By:         /s/ Franklin K. Moss
                                           Franklin K. Moss
                                           Sara A. Corello
                                           SPIVAK LIPTON LLP
                                           1700 Broadway, Suite 2100
                                           New York, NY 10019
                                           (212) 765-2100
                                           fmoss@spivaklipton.com
                                           scorello@spivaklipton.com

                                           *Attorneys for Directors of the Motion*
                                           *Picture Industry Pension Plan & Directors*
                                           *of the Motion Picture Industry Health Plan*